

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00175-CR
_____

ROGER DALE GENTRY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th Judicial District Court
Cass County, Texas
Trial Court No. 2006F00129

Before Morriss, C.J., Moseley and Cornelius,* JJ.
Memorandum Opinion by Justice Cornelius

_____
*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

Roger Dale Gentry appeals from his conviction by a jury for aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii) (Vernon Supp. 2008).[1] The jury assessed his punishment at life imprisonment and a $5,000.00 fine. Gentry has two other convictions currently on appeal before this Court.[2]

Gentry's first four points of error contend he was denied his right of confrontation of witnesses when the trial court refused to allow him to cross-examine witnesses and the child victim, H.G., about statements H.G. allegedly made to a schoolmate in which H.G. described Gentry as having come to her house and raped her.

In two related points, Gentry contends the trial court erred in allowing a State's expert witness to testify, although the State allegedly had failed to comply with a discovery order to give Gentry notice of the data on which the expert's opinion was based; and the trial court erred in partially closing the courtroom when the child victim testified. In Gentry's final point, he contends the trial court erred in allowing the State to introduce evidence of an extraneous offense committed by Gentry. We overrule all these points and affirm the judgment.

---

[1]We note that the judgment indicates the statute for the offense as TEX. PENAL CODE ANN. § 22.021(2)(A). The correct statute is TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii).

[2]Gentry appeals from three convictions. In cause numbers 06-07-00175-CR and 06-07-00177-CR, he appeals from his convictions of aggravated sexual assault of a child, and was sentenced in each case to life imprisonment and a $5,000.00 fine. In cause number 06-07-00176-CR, he appeals from his conviction of indecency with a child by sexual contact, and was sentenced to twenty years' imprisonment and a $5,000.00 fine.

**FACTUAL BACKGROUND**

H.G.'s parents divorced when H.G. was an infant. H.G. testified that, when she was six years old and went to visit her father, she would often spend time with her aunt, Sue Gentry, and Sue's husband, Gentry, the appellant here. Sue Gentry was the sister of John Garrett, H.G.'s father. Garrett and Gentry both worked for the Cass County Sheriff's Department. H.G. called Gentry "Uncle Dale."

H.G. made outcries to three persons about three different incidents. Gentry does not complain about the admissibility of the outcry statements. H.G. testified that, when she would visit the Gentrys, "Uncle Dale" would take care of or watch over her and they would spend time together while no one else was around. She said that, one day, Gentry laid her on the hood of a car, pulled down her shorts and panties, and licked her privates. She said the Gentrys had a long driveway that enabled one to see a car approaching from a distance and that Gentry stopped this conduct when he saw H.G.'s father coming up the driveway.

H.G. said Gentry would sometimes let her sit on his lap as he drove, and she would help him steer the vehicle. She said that, one day while doing this, Gentry reached down and unzipped his pants, allowing his sexual organ to come out. Gentry then sat her in the middle of the seat, forced her head down, and put her mouth on his sexual organ. H.G. also described a time she and Gentry went to a pond behind Gentry's house. While there, Gentry laid her on a log, removed her shirt, and touched her breasts.

3

Gentry's first four points concern several statements allegedly made by H.G. about which Gentry wanted to cross-examine witnesses. The report of Ranger Jay Womack's investigation of this matter contains a reference to a statement allegedly made by H.G. to a schoolmate, A.H., that Gentry would spy on H.G. through her bedroom window, then come into her room and get on top of her. Both H.G. and her mother said Gentry had never been to the Garrett home. At trial and at oral argument before this Court, the State and the defense agreed that, if asked, H.G. would deny saying this to A.H. and that H.G. had denied this statement at a prior trial in this case. H.G. also described a "tattoo" Gentry purchased at a Shell service station and then put on his penis. But when Ranger Womack showed H.G. a condom and stick-on tattoos, H.G. said neither was what she had been talking about. The statement about Gentry spying on her and coming into her room was not allowed before the jury, but the story about the tattoo, as well as evidence that H.G. told the Ranger that Gentry had sexually assaulted two other girls, Jennie and Kayla, when he had not, did come before the jury. Also, H.G. testified that one time Gentry took her to a dog pen near his house and put her in the pen with the dogs until her aunt Sue came. Gentry and his wife, Sue, both testified there was no dog pen on their property and no such incident happened. H.G.'s school counselor, to whom H.G. made an outcry, testified that H.G. left her a note saying that Gentry pushed her head under water. Gentry's counsel told the court, outside the presence of the jury, that H.G. also said she inflated "floaties" on her arms to keep from going under. Sue testified she had never seen evidence, when H.G. was at their house, that H.G. had been put in water.

4

Gentry contends the trial court erred in limiting his ability to cross-examine the State's witnesses regarding the statements allegedly made by H.G. to A.H.

## LIMITATION OF CROSS-EXAMINATION OF STATE'S WITNESSES

### State's Expert Laura Greuner

Laura Greuner, a therapist specializing in child sexual abuse and child trauma, testified for the State. She testified about common behavior exhibited by children who have been the victims of sexual abuse. She said typical behavior or characteristics include acting out, low grades, nightmares, anxiety, and pseudomaturity. The State's counsel asked her about other characteristics of abused children and Greuner acknowledged them. Greuner said that H.G.'s theft of a cell phone and falsely saying two classmates had also been sexually assaulted by Gentry were not unusual for victims of sexual assault. Ranger Womack had said that, while H.G. had told him about two classmates, in his investigation, he found that one, Jennie, had not been assaulted, and the second, Kayla, was a name made up by H.G. Greuner said such actions were consistent with abused children because they need to find a variety of ways to tell what happened to them. Greuner said that H.G.'s theft of a cell phone from a teacher, where H.G. had no prior history of such conduct, was consistent for a child sexual assault victim, in that the act could reflect anger, frequently seen in such victims.

Gentry argues that the trial court violated his cross-examination and confrontation rights in refusing to allow him to cross-examine Greuner on whether she was aware that H.G. had previously stated that Gentry came to her house at night, spied on her while she took a bath, and raped her.

5

We review evidentiary rulings under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). The trial court abuses its discretion when it acts without reference to any guiding rules and principles, or acts in an arbitrary or capricious manner. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). A trial court does not abuse its discretion if its ruling is at least within the zone of reasonable disagreement. *Salazar*, 38 S.W.3d at 153–54.

With respect to both the Confrontation Clause and the general principle of permitting the impeachment of the credibility of any witness, the trial court retains broad discretion to impose reasonable limits on cross-examination in order to avoid harassment, prejudice, confusion of the issues, possible danger to the witness, and the injection of cumulative or collateral evidence. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). The rights of confrontation and impeachment guarantee only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense may wish. *Del v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Delaware v. Fernsterer*, 474 U.S. 15, 20 (1985); *see also Booker v. State*, 929 S.W.2d 57, 65 (Tex. App.—Beaumont 1996, pet. ref'd). The Texas Court of Criminal Appeals has recognized both the right and the limitations on the right of cross-examination. Issues regarding the Confrontation Clause must be examined on a case-by-case basis, taking into account both the defendant's right of cross-examination and the risk factors associated with the admission of the evidence. When there is a conflict between the Confrontation Clause and the Texas Rules of

Evidence, the Constitution must control, but where possible, such inconsistency should be removed by reasonable construction. *Lopez v. State*, 18 S.W.3d at 222–23.

Rejecting Gentry's objection, the trial court stated:

> The fact that an expert may have and review the Ranger's report doesn't necessarily mean that everything in the report then becomes admissible into evidence and subject to cross examination of the expert. . . . The fact that an expert may reasonably rely upon the conduct of a child victim, discussing what happened to her with other playmates is one thing. To then say that she can be cross examined about a statement allegedly made by the victim to another playmate that the victim denies making, to me, strains the reach of Rule 703.

The trial court clearly made its decision with reference to guiding rules and principles, and did not act in an arbitrary or capricious manner. *See Lam v. State*, 25 S.W.3d 233, 236–37 (Tex. App.—San Antonio 2000, no pet.).

Gentry cites *Wheeler v. State* for the proposition that an opposing party is always entitled to cross-examine an expert witness concerning the facts and data on which the expert relied in forming a conclusion or opinion, and also about information of which the expert was aware but on which she did not rely. *Wheeler v. State*, 67 S.W.3d 879, 883 (Tex. Crim. App. 2002). The decision in *Wheeler v. State* is not on point with the case before us. In *Wheeler v. State*, the Texas Court of Criminal Appeals ruled that the trial court had the discretion to *allow* the cross-examination of the expert because she had "opened the door" to the evidence. In our case, the question to be decided is whether the trial court had the discretion to *refuse* to allow the cross-examination because of the

7

danger of unfair prejudice, harassment, confusion of issues, and the injection of cumulative or collateral evidence. We conclude that the trial court did have such discretion.

If it can be considered that the trial court erred in this regard, we conclude, beyond a reasonable doubt, that any error was clearly harmless and did not contribute to the conviction or punishment or affect Gentry's substantial rights. The trial court stated its reasons for not allowing Gentry to question Greuner on this collateral issue. Additionally, we note that Greuner was privy to and testified about other statements and conduct by H.G. that called into question H.G.'s credibility, e.g., that H.G. had falsely said that Gentry had also abused two schoolmates of hers, "Jennie" and "Kayla" and that H.G. stole a teacher's cell phone.

**Limitation of Cross-Examination of Child Victim, H.G.**

The trial court refused to allow Gentry to bring up H.G.'s purported statement to A.H. when H.G. was testifying. Later, Gentry announced that he intended to call A.H. to testify, whereupon the trial court ruled it would not allow such testimony.[3] Gentry made an offer of proof as to what he anticipated A.H. would say if called, that is, she would say that H.G. told her that Gentry came to H.G.'s house to spy on H.G., came into H.G.'s room, took his clothes off, and raped H.G. Gentry told the trial court he wanted to question H.G. and A.H. about the statements contained in the Ranger's report in order to impeach H.G.'s credibility. Gentry argued that the alleged statement of H.G. to her schoolmate A.H. about Gentry spying on her at her home and coming into her room and raping her

---

[3]This exclusion is the subject of Gentry's fourth point of error.

8

was inconsistent with her allegations of sexual assault and indecency by Gentry. Gentry contended that this qualified as an inconsistent statement because both H.G. and her mother would testify that Gentry had never been to their house.

When considering his ruling on Gentry's request to question H.G. and A.H. about this purported statement, the trial court took the position that the statement was conduct and would be inadmissible for impeachment purposes under Rule 608(b) of the Texas Rules of Evidence. *See* TEX. R. EVID. 608(b). The trial court stated, "The conduct is the lie. . . . that's what 608(b) specifically prohibits." We have held that a victim's false allegation of sexual misconduct against a person other than the defendant could not be inquired into in a sexual assault case to impeach the victim's credibility because, among other reasons, it constituted conduct within the meaning of Rule 608(b) of the Texas Rules of Evidence. *Benjamin v. State*, No. 06-01-00022-CR, 2002 Tex. App. LEXIS 3289 (Tex. App.—Texarkana May 10, 2002, pet. ref'd) (not designated for publication). We also find several other proper legal bases the trial court could have found that support its exclusion of this cross-examination.

We reiterate the standards and citations referred to above regarding the trial court's discretion in the admission or exclusion of evidence. The trial court retains broad discretion to impose reasonable limits on cross-examination to avoid harassment, undue prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Moody v. State*, 827 S.W.2d 875, 891 (Tex. Crim. App. 1992).

9

We find the trial court here did not abuse its discretion in excluding this evidence. We reach this decision after considering the trial court's substantial discretion regarding the admission or exclusion of evidence, as well as its discretion to limit cross-examination and to avoid allowing the proceeding to devolve into a trial of multiple sub-issues on collateral matters. Additionally, we point out there are other allegedly inconsistent or incredible statements by H.G. that were before the jury that militated against her credibility, such as the statement describing a "tattoo" Gentry put on his penis; her fictionalization of a child named "Kayla," and her allegation that Gentry had assaulted that child and another of H.G.'s schoolmates; H.G.'s claim that Gentry put her in a dog pen, where there was testimony no dog pen existed; and H.G.'s statement that Gentry put her head under water, disputed by Sue Gentry who said she would have noticed if H.G. had shown evidence of having been put under water. The fact that substantial evidence casting doubt on H.G.'s veracity was put before the jury lessens any potential value of this excluded "impeachment" evidence and lends support to the trial court's exercise of discretion in excluding it. If the trial court's action in excluding the evidence was error, we find the error was harmless beyond a reasonable doubt, because this additional "impeaching statement" of H.G. would not likely have added to the weight or force of the other impeachment evidence already before the jury.

**Cross-Examination of H.G.'s School Counselor**

Gentry also asserts the trial court violated his constitutional confrontation right when it refused to allow Gentry to cross-examine school counselor Cassandra Rhone about a statement

purportedly made by H.G. to a schoolmate. Rhone testified she gave H.G. some paper and a pencil to "sort of jot down things . . . ." After that, H.G. began leaving notes to Rhone under Rhone's door. One of the notes said, "[H]e's pushing me in the water." There was some question whether this had happened. Rhone also testified H.G. told her about a time when she and Gentry went out to see a dog pen where they were going to feed the dogs, but that Gentry fooled her because he had already fed the dogs. H.G. said she screamed and Sue Gentry came out. Sue testified there was no dog pen on the property, and she was equivocal as to whether H.G. had ever screamed and drawn her outside.

Gentry wanted to cross-examine Rhone about the purported statements by H.G. to A.H. in order to impeach her credibility. We note that Rhone, like Greuner, was privy to and testified about other statements or conduct by H.G. that adversely reflected on H.G.'s credibility. Thus, the jury was presented with evidence that potentially impeached H.G.'s credibility. Reviewing the totality of the testimony, we conclude that the trial court did not abuse its discretion in precluding Gentry from further questioning Rhone about these statements.

**ALLOWING STATE'S EXPERT MOORE TO TESTIFY**

Gentry also complains of the trial court's allowing the State to present expert testimony from Deborah Moore. Moore testified that she worked with males who had undergone surgical procedures to remove their prostate glands. Moore testified that, even if a male could not achieve an erection, a common result of the surgical removal of the prostate, the inability did not preclude

11

the person from committing a sexual assault. Gentry claimed he had his prostate gland surgically removed, and as a result, could not achieve an erection.

Gentry's complaint is that the trial court entered, in January 2007, a discovery order requiring the State to provide Gentry the name and address of any State expert to be used in the trial, as well as the underlying facts and data for the experts' opinions. *See* TEX. R. EVID. 705. Before trial, the State furnished Gentry notices identifying the experts it would present, but did not furnish any specific facts or data on which Moore would rely in her testimony. The trial court asked the prosecutor if Moore had been provided with anything that had not previously been furnished to defense counsel, and the prosecutor said she had not. The trial court overruled Gentry's objection to Moore's testimony.

Gentry was allowed a running objection to Moore's testifying, whereupon defense counsel questioned Moore on voir dire. Moore was asked what facts or data she relied on in reaching her opinions. She said, "Twenty-five years of experience working with sexual offenders who have had various medical conditions resulting in an inability to achieve an erection." When asked to tell what documentation she relied on, she said, "I have seen medical reports. I have relied on sexual histories provided by those clients and verified with polygraph exam. I think those are the two sources."

The standard of review for a trial court's ruling on the admission of evidence is an abuse of discretion. *See Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.—Texarkana 2000, pet. ref'd). On this issue, the trial court stated clearly that its reason for ruling as it did was that, as it understood the

12

testimony, Moore did not base her testimony on material given her by the State, but on her experiential knowledge acquired in her work. Under questioning by the trial court, Moore said she had not, in preparation for her testimony, reviewed medical records or histories of her clients. She did say she had reviewed a report given her by the State that was prepared by Ranger Womack and she had reviewed that report, but her testimony was based solely on her own knowledge.

Gentry does not dispute that he was given the Ranger's report, albeit in a different context. Moore did not testify as to any of Gentry's medical records, but only discussed the general medical implications of a radical prostatectomy. The trial court ruled that the State had substantially complied with the discovery order by furnishing Gentry with the Ranger's report. We find that Gentry had adequate notice of what Moore reviewed. The record does not support a finding of bad faith on the part of the State, and the trial court did not abuse its discretion in allowing Moore to testify.

## DENIAL OF MOTION FOR A CONTINUANCE

When the trial court denied Gentry's objection to Moore's testimony, Gentry moved for a continuance, which the court denied. The trial court's ruling on a motion for a continuance is reviewed for an abuse of discretion. *Heiselbetz v. State*, 906 S.W.2d 500 (Tex. Crim. App. 1995); *see* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.06(6) (Vernon 2006). To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of the motion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996). Moreover, a motion for

a continuance must be in writing. *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999). The record does not show a written motion for a continuance, and Gentry has not shown prejudice. We find no abuse of discretion in this regard.

**TRIAL COURT'S DISCRETION TO PARTIALLY CLOSE COURTROOM**

When H.G. was about to take the stand, the trial court partially closed the courtroom. The matter was discussed at a pretrial hearing where the court stated its intention of allowing only immediate family and necessary personnel to be present during H.G.'s testimony.

Gentry contends the trial court's action in partially closing the courtroom violated his Sixth Amendment right to a public trial. To protect the well-being of a child complainant, the trial court may partially close an otherwise public trial. *Fayerweather v. Moran*, 749 F.Supp. 43 (D. R.I. 1990). The trial court has broad discretion to administer proceedings in the courtroom. *See State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 199 (Tex. Crim. App. 2003). This discretion includes the right to partially close the courtroom by excluding certain nonessential persons because of the extremely sensitive nature of the evidence being developed and the youthful age of the witness. *Mosby v. State*, 703 S.W.2d 714 (Tex. App.—Corpus Christi 1985, no pet.). Moreover, there is a firmly established practice in Texas of allowing child victims to testify via closed circuit television. *See Belt v. State*, 227 S.W.3d 339 (Tex. App.—Texarkana 2007, no pet.); *Ruiz v. State*, 939 S.W.2d 245, 246 (Tex. App.—Austin 1997, no pet.); *see also Maryland v. Craig*, 497 U.S. 836, 855 (1990). We find the

trial court acted within its discretion in partially closing the courtroom during the testimony of the child victim in this case.

## INTRODUCTION OF EXTRANEOUS OFFENSE

The State attempted to introduce evidence of two extraneous sexual offenses committed by Gentry. One of those offenses was a sexual offense allegedly committed against a two- or three-year-old child that occurred more than twenty years ago. The trial court refused to allow evidence of that offense on the basis of remoteness since the victim was only two or three years old at the time. The other extraneous offense was one against Linda Marteal Kitchings when she was about ten years of age. The trial court allowed evidence of that extraneous offense. Kitchings testified that, in 1978, her parents were friends with Gentry and his wife at that time. Kitchings said that, when she was about ten years old and during a time when Gentry and his wife were babysitting Kitchings, Gentry cornered her in the bathroom of his house. He removed Kitchings' clothes and forced her to perform oral sex on him. Kitchings said Gentry ejaculated. She said that, on a second occasion, Gentry came into a bedroom where she was lying down. With his pants down, he climbed on top of her, achieved an erection, and ejaculated.

Again, we note that the trial court's ruling on the admission or exclusion of evidence is reviewed for an abuse of discretion. However, as concerns the admission of evidence of extraneous offenses, there are limits. A defendant is not to be tried for his general disposition to be a criminal, but only for the specific acts alleged in the charging instrument. *Abdnor v. State*, 871 S.W.2d 726,

15

738 (Tex. Crim. App. 1994); *see* TEX. R. EVID. 404(b). Rule 404(b) of the Texas Rules of Evidence allows the introduction of evidence of extraneous offenses to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404. This list is not exhaustive, but illustrative. *Johnson v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004); 1 Steven Goode, et al., *Texas Practice: Guide to the Texas Rules of Evidence* § 404.6.1 (3d ed. Supp. 2008).

In this case, the State advised the trial court it was offering evidence of the assault on Kitchings as evidence of plan, method of operation, and common scheme. But when the trial court allowed the introduction of the evidence, it based its ruling on Gentry's asserted defense of medical impossibility. Gentry had produced evidence that, in 1999, he had his prostate gland surgically removed, and the operation rendered him totally unable to have an erection and he could not commit a sexual assault. The alleged assault on Kitchings, however, occurred some twenty years before Gentry had his surgery.

We will uphold the trial court's ruling if it is legally correct, even if the court's stated reason for admitting the evidence is erroneous. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Dugard v. State*, 688 S.W.2d 524, 530 n.2 (Tex. Crim. App. 1985), *overruled on other grounds by Williams v. State*, 780 S.W.2d 802, 803 (Tex. Crim. App. 1989); *Abshire v. State*, 62 S.W.3d 857, 861 (Tex. App.—Texarkana 2001, pet. ref'd). The State originally proffered Kitchings' testimony under the exception to Rule 404(b) that allows evidence of extraneous offenses to

establish a common scheme or method of operation. The State pointed out that both H.G. and Kitchings testified they were assaulted by Gentry while they were in his charge, as if he was babysitting them; he let both of them help him "drive" a vehicle while sitting on his lap; and both children were of elementary age, H.G. six and Kitchings ten. Kitchings said that Gentry always pulled her hair to assert control over her while abusing her. H.G. said Gentry would hit her in the side of the head and force her mouth down on his sexual organ. In addition to his defensive theory that he could not have sexually assaulted H.G. because of his prostate removal, Gentry, through direct testimony, cross-examination, and argument, implied that H.G. was making up or fabricating her allegations. Gentry took the stand and denied H.G.'s accusations. And the defense related or referred to numerous statements by H.G. that it claimed were false and destructive of her credibility. Gentry's counsel emphasized in his opening statement that H.G. had been spending a significant amount of time at the Gentrys, and she did not like it because she wanted to spend more time with her father. Counsel indicated that H.G. wanted to avoid spending time with Gentry. Then counsel told the jury, "How does a man who has dedicated his life to law enforcement end up accused of a crime? . . . All it takes is for one . . . little girl to say, something bad happened to me and he did it. That's all it takes. That's all it takes, just her word and his life turns upside down."

A defensive theory of fabrication may open the door to rebuttal evidence of extraneous offenses. *Bass v. State*, Nos. PD-0494/95-07, 2008 Tex. Crim. App. LEXIS 859 (Tex. Crim. App. Sept. 10, 2008); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Here, it was at the

very least subject to reasonable disagreement whether the extraneous-offense evidence relating to the assaults on Kitchings was admissible for the noncharacter-conformity purpose of rebutting Gentry's defensive theory. *Bass v. State*, 2008 Tex. Crim. App. LEXIS 859. In *Bass v. State*, the Texas Court of Criminal Appeals held that evidence the defendant had molested two other children in circumstances that bore some similarity to the allegations in the case on trial rendered the extraneous evidence admissible to rebut the defendant's theory that the child victim had fabricated her allegations and the defensive theory that as a pastor, Bass was not the kind of person that would engage in the charged offense.

The extraneous-offense evidence relating to Kitchings could also have been admissible as evidence of Gentry's common scheme or method of operation, as urged by the State. Both H.G. and Kitchings testified that the abuses occurred while they were in Gentry's care, as a result of Gentry's friendship with the victims' parents; both victims testified that, while in Gentry's care, he let them help him "drive" while they sat on his lap, and H.G. said that, on one occasion, this led to Gentry's sexual abuse; and both victims said Gentry used force applied to their heads or hair to facilitate his abuse. The Texas Court of Criminal Appeals has recently stated, "[n]o rigid rules dictate what constitutes sufficient similarities . . . ." *Segundo v. State*, No. AP-75,604 (Tex. Crim. App. Oct. 29, 2008). The similarities here placed the decision to admit the evidence within the zone of reasonable disagreement, and therefore, within the trial court's discretion.

18

As noted previously, however, the trial court's judgment in this case indicates the statute for the offense is "22.021(2)(A) Penal Code." This Court has the authority to reform the judgment to make the record speak the truth when the matter has been called to our attention by any source. *French v. State*, 830 S.W.2d 607 (Tex. Crim. App. 1992). In *Asberry v. State*, 813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd), the court noted that the authority of the appellate court to reform incorrect judgments is not dependent on request of any party; the appellate court may act sua sponte. The Texas Rules of Appellate Procedure provide direct authority for this Court to modify the judgment of the trial court. TEX. R. APP. P. 43.2.

We hereby reform the judgment to indicate the correct statute for the offense: TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii).

As reformed, we affirm the judgment.

William J. Cornelius
Justice*

*Chief Justice, Retired, Sitting by Assignment

Date Submitted:     October 8, 2008
Date Decided:       December 18, 2008

Do Not Publish

19